Case number 19-4100 Nicolette Cremeans et al. versus Samantha Taczak et al. Oral argument is not to exceed 15 minutes per side. Mr. Kassin for the appellants. Thank you. Good morning. Good morning. May it please the court, I'm Patrick Kassin. I represent the Chillicothe defendants. If I might, I'd like to reserve three minutes of my time, very well. This case is a situation where the plaintiffs are attempting to impose liability upon a police department for the negligent actions of a third party, the prosecutor. There's three facts in here that I think are crucially important to understand, especially if you're not familiar with Ohio law. First, the prosecutor is different from the who brings felonies on behalf of the state of Ohio. He's in a different building. He's employed by someone else. He's employed by the county. The police department are employed by the city. Second, their roles are completely different. What happened here is the Chillicothe Police Department, the only party in this case, investigated the crime, put together a file, and submitted it to the prosecutor. We took the evidence for two simple reasons. Number one, to investigate it. Judge Martley made a factual conclusion that the time the police department took to investigate it was reasonable under due process. So we seized it. The second reason we held it was pending what the prosecutor did, right? And that's what happened. Pre-seizure investigation you're talking about, right? I'm talking post-seizure investigation. The judge found that after we seized the money pursuant to the warrant, the amount of time it took to put the case together to give the file to the prosecutor was fine. And he found no fault with it. The second thing that police departments do is they hold the evidence for chain of custody reasons until the prosecutor decides what he wants to do. That's where Judge Martley found fault. He found that this party prosecutor, who we have no control over, waited too long to file the charges and file the forfeiture. There was no evidence in the record that we could foresee this prosecutor would delay in the manner that he did. But you don't have to hold it. I mean, you make a record of what it is. Somebody's asking for it. You're controlling it. You say to the prosecutor, what's going on? If you don't do something, we're going to be giving it back because we have no reason to be keeping it. Sure. Sure. And so when the prosecutor tells them, I think the indictment's coming, we're of course going to hold it. But if you look at Parrott, and Parrott's directly on did not have anything to do with third-party negligence. What Parrott said, the Supreme Court's decision that Parrott said is, look, if you've got a pre-deprivation remedy, because you know you're going to fire an employee, you know you're going to take somebody's property interest, and you don't do it, it violates due process. But there's times when a governmental entity doesn't know that they're going to violate somebody's due process rights. And in those situations, so long as there's an adequate post-deprivation remedy, then that meets due process. So look at it here. Our investigation was fine. We turn over the file to the prosecutor, and the prosecutor delays outside our control. And that's what the finding was. We couldn't anticipate that. So under Parrott, what we needed to, and there was no action we distinction between forfeiture and seizure. Forfeiture means you file an action to say, we want that property to become ours. That's not what we were doing. We were just holding it for the prosecutor. We had seized it. Those are two different things. So we're not going to file a forfeiture action, say we want this property to be ours. We didn't even know if the prosecutor, they could know billing. We're holding it, and there's no action we can file to go to a judge and say, hey, we're holding this for a while. The prosecutor's taking his time. We want permission to hold it longer. There's nothing we can file. But as Judge Marbley specifically found, there were two post-deprivation remedies they could have found. And that's what Parrott held. Parrott held that if there was no pre-deprivation hearing you could have had, so long as they've an adequate remedy post-deprivation, then that's fine. So there's two facts that control this case. Judge Marbley's factual finding that it was the prosecutor who was negligent, the third party, not us. And Judge Marbley's factual finding in his decision at page 20, that they had post-deprivation remedies that they chose not to use. And let's talk about those two post-deprivation remedies. Let's ask some questions about all this, too. So Parrott, I mean, it seems like the rationale of Parrott is that certain due process violations are not necessarily complete until the plaintiff, or the party affected, avails himself of some remedy. Is that fair, do you think? I think what Parrott said is there are certain due process remedies that aren't foreseeable. So in Parrott, a prison guard negligently lost a prisoner's property. That wasn't lost through an established procedure. And that seems like, you know, a long ways away from this case. Well, in this case... I mean, this was seized pursuant to a search warrant, for crying out loud. That's not some Judge Marbley took issue with. What Judge Marbley took issue with is the delay. How long we held it until the prosecutor negligently did indict. Right. And the delay, at some point, the delay itself makes the violation complete, regardless of any post-deprivation remedy. Sure. But in Parrott, the court noted that what due process requires is a hearing and opportunity to be heard. And if there's no hearing you can have before the deprivation is complete, then the post-deprivation remedy is deficient. So here, they showed they had a post-deprivation remedy. They fought a replevant action, got part of it back. And Judge Ader, and this is in the record, told the prosecutor at that hearing, you better go do something, file indictment, file forfeiture, or I'm going to give it back to them the next time they're here. But they had an adequate post-deprivation remedy under replevant action. And then Ohio law specifically contemplates this situation. Revised code 298103A4 has nothing to do with forfeitures. It says if your property is seized and it's pre-indictment and you think it's unlawful, you get a hearing in 21 days where we're going to hear it and see whether they should keep it or not. So they also had that remedy. And Judge Marbley didn't find that either one of those remedies were inadequate. They just found that they didn't have to exercise them. Does that require an improper seizure? I'm sorry? Does that statute require an improper seizure? I don't think so, because I think that the word... Mr. Farmer, if I may, Mr. Farmer, if you could stop non-verbally communicating. It's just distracting when we're trying to hear Mr. Kassin. Thank you, Your Honor. Okay. So it requires anything that's unlawful. The term is as broad as could be. Now, at the hearing in front of Judge Marbley, they talked about the seizure being unlawful. They talked about the length of it. Everything that went on at Judge Marbley's preliminary injunction hearing would have happened within 21 days of them filing that action. They would have got a hearing two and a half months earlier than they did in this case. So if you think about it, there was nothing we could do to give them a hearing on whether or not the prosecutor was holding it too long. It's directly... We had no idea that it was going to continue to delay and delay. And you can't. There's no hearing for you to go out and say, we think the prosecutor's delaying. Let's give you a hearing. There's nothing we can file in Ohio law. And Parrott talked about not... It talked about them having the right to seek a hearing, to seek a remedy. So, counsel, let me ask you this. You see something. You're holding it. The prosecutor never brings an action. The people ask for it back. You're saying that you don't have to return it until they start to reclaim an action? What are you saying? What I'm saying is the standard for how long that delay can be is amorphous. And Ohio law doesn't recognize that the police department are going to make a decision and say, hey, the prosecutor's amount of time and indicting is unreasonable. It's not our role. We're to hold it for chain of custody purposes. They have a remedy, which is all that Parrott requires. Look at it in a practical sense. If you rule for the plaintiffs in this case, you'll be holding, but every single time a police department is holding evidence pre-indictment, a defendant can run off and file a 1983 action, claiming that the length of time they're holding this evidence violates due process. Because there's no bright line, right? Parrott and all the cases say there's no bright line. It depends on the circumstances. So every defendant in the Sixth Circuit will be able to run off and say, hey, I haven't been indicted yet. They've had my property for three months under these circumstances. That's unreasonable. But there's a, I mean, there's a test. Don't we, we use the Barker test, right? The cases, you apply that test. Of course. But what you'll be saying is instead of using the remedy specifically spelled out by the Ohio legislature, they're going to run the federal court for 1983 act. This court has consistently been of the opinion that 1983 acts are not first line claims. Right? And that's what you would make it. You would make it a first line claim where they could bypass two adequate state remedies. They tried to come in and the court thought it was too soon. And I'm not convinced that the other statute applies. But the other statute specifically says a person aggrieved by an alleged unlawful seizure of property may seek relief by filing a motion with the appropriate court. That's an unlawful seizure. Do you have any cases where that statute has been applied, where there's a completely lawful seizure, but they're holding it too long? So no, the statute's new, but the seizure is a seizure. They still have it. Yeah, but I mean, but you know, if, if that statute doesn't apply for the reason Judge White just suggested and Riplevin was exhausted, then it seems like you lose. I mean, am I missing something? Well, no. I mean, I think if you look at the record on what happened in the Riplevin action, what the judge said was, hey, I'm going to give you back this property. They're still investigating this. And he told the prosecutor, you better have something or I'm going to give it back. And then the investigation was complete. We gave the file to the police department and they had every right to go refile a Riplevin action because as they made clear in the record, the judge dismissed it without prejudice, specifically so they could come back. Okay. So your argument is they could have brought another Riplevin action? Or reopened that one. I mean, they made a really clear record that the common police court judge was honked off at the prosecutor for the delay and was clear. If you don't get your stuff together, I'm going to give it back to them. And the record is replete with comments of that. Okay. Well, if you want your rebuttal, we better give Mr. Farmer a chance here. So Mr. Farmer, I think you're muted, sir. Can the court hear me now? Yes, sir. But we can't see you now. I don't know what happened. You have to see me because I don't need to be seen. That's all right. Your honors, I don't know what happened. So I'm going to go ahead and speak. First of all, Judge White is correct. RC-29-8103-A4 requires that a grieved party to show, among other things, that the seizure was unlawful. Of course, the seizure was not unlawful because it was done by a search warrant. Everything that the appellants have stated are basically a red herring. It really has nothing to do with this case. Citizens of this country have access to U.S. District Courts for 42-1983 actions. I could not go back before Judge Ader because he was still bound by the rule of law and the state's statute that requires that when the respondents say an ongoing investigation, if they claim an ongoing investigation, then Judge Alter's hands are tied. Every case law, the state, the law that the defendants, I mean, appellants relied upon in the Republican hearing was Hicks v. City of Barberton. And we talk about this on page 26 and 27 of the brief. All of those cases hold that when there's an ongoing investigation, that's the statute holds that when there's an ongoing investigation, that they cannot, they don't have to give the property back. And that's the problem here. Judge Ader is bound by their statute. And no matter if they come in there the next time, we file a reprimand the next time, they're still bound by their statute. He did not put his words in order. Those were just words after he issued the order that Mr. Kasson said. Now, first of all, Mr. Farmer, how would you respond to Mr. Kasson's point that he says this delay is really the prosecutor's fault and not the fault of his clients? First of all, Your Honor, the record is clear that the city does not, the prosecutor did not have control of this property. No control of the property, did not have the property, still doesn't have the property because Judge Marbury issued an order for the city to keep the property. They can't change it. They couldn't test it or anything. At all times relevant to this case, and even as I speak, the city has the property. They still have the property. And that's just hogwash to try to say it goes to the prosecutor. The case went to the prosecutor. They only filed something against Mr. Kameens after we filed the suit. The city were the right parties. They are still the right parties. If they weren't the right parties, they could have told Judge Marbury, hey, we have the wrong parties. It'd be the county. But Judge Marbury asked the police chief himself, who is a defendant in this case, do you have the property? And he said, yes. I'm ordering you to hold the property. So the city just willfully refused to give it up. Give the property up. So there's no issue about who this third party claim that Mr. Kesson has stated is not in this case. The court's order in the record is clear. At all times relevant to this case being prosecuted in a federal court, the defendants, the city in this case, city police department had the property. When I went down to get some of the property that Judge Marbury ordered released, I didn't go to the prosecutor. I went to the city police station where the property is being held. So to say that is just wrong. And what's important to this case, we're talking about delay in forfeiture, not whether someone could be prosecuted or indicted. And in Revised Code 29-8103-A2, this merely states that it is clear that all they need is probable cause to seek, to search, and subject something to a forfeiture. That's why in United States v. May, the court said that we cited it. The court said that was the beginning of a forfeiture. That was all that was needed at the beginning, that probable cause. The same probable cause that they got the search warrant with was the same probable cause that they could have used to indict, the same probable cause that they could have used to file for forfeiture, and that was the day they did the search. So they could have used that same probable cause the next day and filed for forfeiture, what is most prosecutors in most cities do. They file for forfeiture long before an indictment has gotten, and then they ask for a stay. They say, we want to stay this because now we have this investigation of cases before the grand jury. This is a procedure. This is nothing new in Ohio. They do it all the time. They file for forfeiture, and then they ask the court for a stay and move on. And if it's a criminal forfeiture, they do the same thing. They ask for a stay until the case is heard by a jury. So, I mean, just out of curiosity, Mr. Farmer, why do you think that didn't happen here? Do you have any idea what's going on? I think that didn't happen because what happened in this case, your honor, is that they were thinking that Mr. Well, they said that they believe that Mr. Kameens was involved in something that he was not involved with. And they did not find any drugs in Mr. Kameens' home, but they found drugs in another person's home. And they thought at first that Mr. Kameens had something to do with it, which he didn't. And the lady kept telling them that, but they didn't believe them. And so they thought that, you know, they believed. I'm not speaking to their thoughts. I'm talking about what I read, is that they would have something, but they never had anything. No doubt, probably, whatever they did, no drugs found, but they probably thought that this lady was going to lie on Mr. Kameens or something. But I don't know, your honor. I asked for it in writing long before I, long before I filed a repreventive action. So, it is our position that the state of Ohio, I mean, the city of Chillicothe could have filed for a forfeiture action the day after they seized the property. If the court would solve the search warrant, and that was probable cause, they saw the search warrant with their lairs in there. If they really had probable, if they had probable cause, they had probable cause for an indictment. They didn't even indict it. They had probable cause, again, to file for a forfeiture. They didn't. Well, you say they, counsel, you're talking about, opposing counsel's point is that you're talking about a third party now. The city, the police couldn't indict them. No, that's correct, your honor. But the city, the city, no, you're right, your honor. What I'm talking about is, I apologize for putting the indictment in there. What I'm talking about is for forfeiture. The city is usually the individuals who file for forfeiture right after they get the property, and then they ask for a stay. They ask for the court to stay until the items are, until they complete their investigation. And that's the usual manner. So I apologize for bringing the indictment in there, because I shouldn't. But as I said, in this case, it is clear on the record from Judge Marbury, who asked him, why, who has the property from day one. He asked the chief of police at the hearing. He issued his order that they cannot test the property, give the property away, or remove the property. Your honor, I'd like to talk a little bit about things that were in defendant, appellant's reply brief, because we didn't get a chance to respond. They claim that a Pullman doctrine, the Pullman case applies in this case, which it doesn't, because Jones versus Coleman out of this court, the case that they cited, makes it clear that there has to be an ongoing state issue at issue. And Pullman is so old, it doesn't have any, where, you know, nowadays what courts do, they just certify something to the Supreme Court or the highest court in the state, and they get the answer to a state law question that way. In this case, there's no state law questions to be asked. I had an issue in any court. In the federal court, there's no state law issues. In this court, there's no state law issues in dispute. And certainly there's nothing pending in the court of Ohio. So that case doesn't apply. I mean, the Pullman doctrine doesn't apply, and it would only mean that jurisdiction could be postponed until the court had a question of state law certified. But it has nothing to do with this case at all, nothing at all. And Coleman, which they cited, clearly states that there's nothing at issue in the state court in this case. So, Mr. Palmer, if I can ask you just a question about the record, I suppose. The district court's injunction, I mean, is that just telling the city, or these defendants, that they have to return this cash to Mr. Cremains? Is that the... Yeah, Cremains, correct. Yes. Yes, your honor. And this is the reason why. This case is based upon speedy hearings, a right to a proper and speedy forfeiture hearing is based upon the speedy trial doctrine in Wingo, in the Barker versus Wingo case. So if you have a person, the state or the city, if it's a city case violates that speedy trial clause, those are harsh punishment. They have to throw the case out. They dismiss the case. In this case, it's the same way. When they failed to do a timely forfeiture, file for timely forfeiture, and only after Judge Marbury had basically, as he said, he basically was writing his decision when they finally do file for forfeiture specifications. So the case went a long, long, long way. And therefore, he ordered the money returned, but put a stay on it for this court's purpose. Now, what's interesting, this is abuse of standard, abuse of discretion standard. And if somebody may not agree with Judge Marbury's decision, but I've read it over and over, and there is no abuse of standard, abuse of discretion standard. He did not abuse of discretion. Nothing he did comes to that height, and nothing that the appellants argued shows abuse of discretion, that standard here in this case. It's simply that he ordered the money back. And it doesn't stop defendants, I mean, the city or the state from prosecuting. They don't need the money to prosecute or whatever to prosecute Mr. Cremins, as this court has had many cases, drug cases, where they didn't have a grain of drugs or a testimony from witnesses, and they had photographic evidence. And Ohio Criminal Rule Procedure 26 allows them to take photographs of whatever they have and prosecute. Plus, they have the testimony of Mr. or Mrs. Cremins from federal court below, and from the state court admitting, saying that they possess these things. So they have already met one element from the testimony of Mr. and Mrs. Cremins themselves. They already have admitted and testified that they possess the money, and all the state has to do if they want to prosecute him is to take copies of it, like most, as I said, like most federal drug cases are, they don't have actual drugs many times. Many times they don't have actual drugs there, and there's no distinction between an intangible or tangible property right. It's not a factor. I think that was another point that the appellants brought up in their reply brief that we didn't get a chance to respond to. There's no case law on that. They cited none. There is no distinction between tangible and intangible property rights here. What we're talking about is simply a delay in the city from doing what they should have done, merely filed for forfeiture, and to be honest with you. What, I'm sorry to interrupt you. You want to finish your thought? No, I want to hear what you have to say. Okay. What would you say in response to Mr. Kasson's practical concern that if we were to affirm the judgment here, we'd have a lot of of an investigation, and we're going to get all these 1983 suits that are going to obstruct or be an obstacle for these legitimate state investigations? Even if that was the case, your honor, even if that was the case, that wouldn't be right. You could rule on this case and say this applies to this case only, if that was the case. But it's not the case because there's still certain factors that have to be met. Mr. Kasson is correct. 2928-21-8103 can apply if the property was wrongfully taken. So you still have that avenue. It's just that in this case, the property was not wrongfully seized. In this case, you still have standards. You still wait three months. You got the 8855 case, 5500 case from the United States Supreme Court. You have that case. You still have some time that has to go before you can file anything in any court. So nobody can wait three months. If you do it in a year, you probably won't get it back. Because again, it's not... How long has it been in this case? It's been 20 months in this case when they filed for forfeiture. And only after we kept bringing it up to Judge Marbury that they still didn't bring it up when they first filed an indictment. After we filed this case, they still didn't put in their indictment the forfeiture specifications that are required by Ohio law. So it's been 20 months, your honor. It was way overdue and the damage has been done. But again, you still have standards to meet. You still have to meet. You just can't file a 42 U.S.C. 1983 case in any federal court and not meet your burden. And it's a tough burden. It's not easy. So I don't want the court to believe that Judge Marbury was wrong about anything because he was not. Any further questions? All right. Thank you, Mr. Farmer. We appreciate it. We'll hear rebuttal. You're on mute, Mr. Kasson. Happens to everybody. There you go. As he pointed out, Judge Marbury is entitled to some deference. Judge Marbury specifically found that they had state court remedies they didn't use. And if you look at what Mr. Farmer told Judge Marbury, I'm going to quote it. Your honor, during the Raplevin hearing, Judge Ader made it clear that they must file a forfeiture. He made it clear they must offer forfeiture if they wanted to keep the property. So there's no question that they had a state court remedy. And so the only question for this court is under Parrott whether they can choose a 1983 action remedy when they have a state court remedy. And the only way they can do that is if we had an we just didn't. If we don't want to own it and we're not seeking to forfeit and we're just holding it for this third party prosecutor to make up his mind, there's nothing we can do. There's nothing we can do in that situation. And the court in Parrott was clear that if the plaintiff has a remedy, they have to exercise it before they sue under 1983. And you asked what happened for the delay in the indictment and Judge Marbury found the prosecutor was negligent. We didn't do anything wrong. And so it's no different than the negligent of the guard in Parrott where the prison system had no idea that he was going to lose the property. We had no idea the prosecutor was going to be negligent and not file it for all that time. Right. Was any of you stopping the department from returning it after a certain amount of time? Just practicality. First of all, we're not the arbitrator of what the appropriate amount of time is. Right. I mean, the Supreme Court in all these cases and the Sixth Circuit has basically said the amount of time that's appropriate depends upon the circumstances. You can't impose that upon a police department to make that decision and tell a prosecutor, we're going to get rid of your trial evidence because we've made a due process analysis that you've taken too long. That's why they have the right to reclaim an action. The judge, the prosecutor was at the reclaimed action. He had the ability to argue there for us just to give it back because we think the prosecutor is messing around. It's just not it's 18 months. Nobody's done anything. He's requested it back and given it back. Well, he would have had it. We've asked the prosecutor multiple times. Can we give it back? He said no. Right. I mean, in theory, we would be obstructing his case, but he said no. I mean, if I had any control over him, don't you think the indictment would have come a lot sooner once they filed their lawsuit? I mean, and again, I go back to what Parrott said. Parrott didn't say we have an obligation to return it. Parrott said we have an obligation to give him a hearing if we can foresee that the due process violation is going to occur and give him the hearing beforehand. And it's just like any negligence of a third party, because it's a third party's negligence. But that's pre-determination. If I may, I mean, the hearing you're talking about in that context, correct me if I'm wrong, because I might be, but they're talking about a pre-deprivation before the seizure hearing. Correct. In that instance, right? Well, or before the due process violation, for example. But taking the property away was the putative violation they were talking about there. Is that correct? Right. The loss of the property. They had already seized it. But right. So, I mean, this case is different in the sense that the seizures already happened. It happened pursuant to an established state procedure, which is, you know, night and day difference from Parrott. Those are distinctions, right? Not in this case, because Judge Marbley didn't find that the first 11 months was a due process violation. I'm talking about the seizure. Okay. The seizure is different. The seizure here, unlike Parrott, happens pursuant to an established state procedure. It's not some random crazy act. It did. And that's quite different from Parrott. But not really, because the violation wasn't the seizure. Here, the violation was from November to July, keeping it. Right. It's the delay. If the prosecutor had filed the charges immediately after we gave them the file, we wouldn't be here. And so the prosecutor's delay had nothing to do with an established state procedure. In fact, the judge specifically found it was negligence. He made a factual finding the delay. All right. Now, that answers my question. Any other questions? No. Hearing none. All right. Thank you both for your arguments. The case will be submitted.